UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:24-cr-00167-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| MILES ELLETSON, | |
| Defendant. | |

**INTRODUCTION**

Defendant Miles Elletson pled guilty to Wire Fraud, in violation of 18 U.S.C. § 1343, and Filing a False Tax Return, in violation of 26 U.S.C. § 7206(1). He objects to two enhancements to the calculation of his offense level for sentencing purposes: one for abusing a position of trust, and one for obstructing justice. At Elletson's sentencing hearing, the Court overruled his objections. This memorandum further explains the Court's ruling.

**DISCUSSION**

For an enhancement to apply, the Court must find facts to support it by a preponderance of the evidence. *United States v. Lucas*, 101 F.4th 1158, 1162 (9th Cir. 2024) (holding that the preponderance of the evidence standard, not the heightened clear and convincing standard, applies to fact finding supporting a

MEMORANDUM DECISION AND ORDER - 1

sentence enhancement, even when the enhancement would have an extremely disproportionate effect on a sentence).[1] As explained below, the Court finds that this standard is satisfied for each of the two enhancements at issue.

*Abuse of a Position of Trust*

Under section 3B1.3 of the Sentencing Guidelines, a two-level enhancement is appropriate if the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." The first question then is whether Elletson was in a position of trust while working for Alloway Electric at the time he committed fraud. The decisive factor for this question is the "presence or lack of professional or managerial discretion" that Elletson had at the time of the fraud. *United States v. Laurienti*, 731 F.3d 967, 973 (9th Cir. 2013) (internal quotation marks omitted).

The factual basis for Elletson's guilty plea and the testimony offered at the sentencing hearing overwhelmingly support the conclusion that Elletson occupied a position of trust. For starters, Elletson admitted in his plea agreement that he was a partial owner of Alloway. Dkt. 20 at 4. And one of Elletson's former co-workers at Alloway, Steve Ragan, testified at the sentencing hearing that around the time

---

[1] The heightened standard would not have applied here even before *Lucas*, as the enhancements did not have an extremely disproportionate effect on Elletson's sentence. *See U.S. v. Jordan*, 256 F.3d 922, 928-29 (9th Cir. 2001). But even if that heightened, clear and convincing standard applied, the Court would find it was met given the weight of the evidence discussed in this decision.

MEMORANDUM DECISION AND ORDER - 2

the fraud occurred, Elletson "ran the day-to-day operations of Alloway." Ragan

added that although there were other owners of Alloway, they were not typically

present in the office and that Elletson did not report to anyone on a day-to-day

basis. Another Alloway employee, Joe Deaver, who worked with Elletson,

identified him as the "boss," explaining that Elletson supervised everyone who

worked at Alloway, "and we worked for him."

Elletson had substantial managerial discretion at Alloway too, which

corresponded to his role as the boss. Alex Vaterlaus, controller of Alloway,

testified that Elletson was responsible for reviewing accounts payable, signing

checks, and approving costs and expenses. Vaterlaus explained that Elletson's

approval of a payment by check was final. This evidence is more than sufficient to

establish that Elletson had the managerial discretion at Alloway for him to have

occupied a position of trust. *See United States v. Robinson*, 165 F.4th 1043, 1052-

53 (7th Cir. 2026) (holding that defendant "exercised plenty of discretion" by

overseeing work, supervising those who approve invoices, and sometimes

submitting invoices).

The second question is whether Elletson abused this position of trust, either

in facilitating the commission or concealment of the offense. The evidence shows

that he did both. As for the commission of the offense, Ragan testified that Elletson

submitted fraudulent invoices to Ragan and told Ragan to process them. Ragan

MEMORANDUM DECISION AND ORDER - 3

added that these invoices were unusual because they were submitted on job orders that had already closed. Ragan explained that he would not have carried out this task if anyone else at the company had asked him to do it: "He was the boss, so . . . I'm going to enter what he tells me to enter." Moreover, Elletson admitted in his plea agreement that he not only prepared fraudulent invoices, but that he approved them and signed the checks to pay them. Dkt. 20 at 4.

The evidence is just as strong that Elletson also abused his position of trust to conceal his offense. Alex Vaterlaus, Alloway's controller, testified that he asked Elletson about the suspicious invoices and that Elletson assured him that they were legitimate. Vaterlaus explained that he accepted Elletson's answer "because of [his] role" at the company. This evidence shows that detecting Elletson's fraud was more difficult because of his role at Alloway. U.S.S.G. § 3B1.3 n.1 (noting the enhancement applies where the defendant's position "ma[de] the detection of the offense or the defendant's responsibility for the offense more difficult"). The Court thus finds that Elletson abused his position of trust both in the commission and concealment of his offense. Elletson's objection to the abuse of trust enhancement is overruled.

### Obstruction of Justice

Under section 3C1.1 of the Sentencing Guidelines, a two-level enhancement is appropriate if the defendant "willfully obstructed or impeded, or attempted to

obstruct or impede, the administration of justice with respect to the investigation . . . of the instant offense of conviction . . . ." U.S.S.G. § 3C1.1. This enhancement applies even if the obstructive conduct occurred before an investigation into the offense began, so long as "the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G § 3C1.1 n.1.

The evidence shows that Elletson engaged in obstructive conduct that falls within this provision. Deaver testified that in reviewing orders and billing, as well as through his conversations with Ragan, he became suspicious about the legitimacy of the invoices later found to have been fraudulent. He stated that he voiced his suspicions to a part-owner of Alloway, Brett Vaterlaus, the day before Thanksgiving 2020. And he testified that on the day after Thanksgiving 2020, he collected files related to potentially fraudulent invoices dating from 2019 and secured them for review. He added that he did not return these documents to their normal storage location within the office.

Deaver and other witnesses testified that Brett Vaterlaus confronted Elletson about his potentially fraudulent conduct in December 2020. After this confrontation occurred, Deaver testified that he saw Elletson walk out of Alloway's office holding boxes. Deaver noticed this behavior because it was unusual for Elletson. So unusual that Deaver reviewed Alloway's security camera

footage and saved clips showing Elletson's conduct, which appeared just as Deaver described—Elletson leaving the office with boxes that seemed to contain files. Two of these clips were admitted and shown during Elletson's sentencing hearing.

Deaver also testified that he noticed Dawn Elletson, Elletson's ex-wife and an administrative assistant at Alloway, shredding documents after Elletson was confronted about potential fraud. Deaver stated that he noticed that Dawn was engaged in an unusually large amount of shredding. Alex Vaterlaus noticed the shredding too, testifying that he saw Dawn and Elletson shredding documents after Brett Vaterlaus had confronted Elletson about potential fraud.

Both Alex Vaterlaus and Deaver testified that after witnessing the shredding, they could not find the potentially fraudulent invoices from 2020. Alex Vaterlaus explained that although he had previously used those files, when he asked Dawn to provide them after the shredding occurred, she could not find them. And Deaver similarly noted that after witnessing the shredding, he could not find the potentially fraudulent 2020 files. Since the files from 2019 that Deaver removed before Brett Vaterlaus confronted Elletson clearly existed, this strongly suggests that Elletson and/or Dawn, his ex-wife, had destroyed the 2020 files.

Dawn also testified at the sentencing hearing and admitted to shredding documents while working for Alloway. She claimed, however, that she did so on a monthly basis and only at the direction of Alex Vaterlaus. She could not recall any

MEMORANDUM DECISION AND ORDER - 6

detail about which documents she shredded, nor could she recall the circumstances of her arrival at or departure from Alloway, or whether Elletson had been convicted of fraud.

The evidence overwhelmingly shows that Elletson engaged in or attempted to engage in obstructive behavior. The credible testimony from Ragan, Deaver, and Alex Vaterlaus established that after Elletson was confronted about committing fraud, he removed documents from Alloway's office and he and Dawn shredded documents. Though none of the witnesses had direct knowledge of which documents Elletson removed or shredded, the witnesses credibly testified that after witnessing the removal and shredding, the 2020 documents linked to Elletson's fraud could not be located. Yet, similar documents from 2019 that Deaver secured before Elletson was confronted about his fraud remained safe. The 2020 documents, moreover, go to the heart of Elletson's fraud and thus to the ability of Alloway and law enforcement to prove his fraudulent conduct. The Court thus finds by a preponderance of the evidence that Elletson obstructed justice or attempted to obstruct justice in removing and shredding documents, as this conduct was intended to and likely to inhibit investigation into the fraud he committed, regardless of whether a formal investigation by law enforcement had yet begun.

The defense argued that the enhancement cannot apply because any such destruction of evidence occurred long before the police were contacted, the

MEMORANDUM DECISION AND ORDER - 7

criminal investigation began, and charges were filed. This argument is frivolous. Any individual in Elletson's position would have known immediately upon being confronted with their fraud that a criminal investigation is extremely likely, if not certain. And it is precisely at that time, and not later after the criminal investigation begins, that a person engaged in fraud will have the best opportunity to influence and possibly avoid criminal prosecution by destroying evidence. For these reasons, the Court categorically rejects the defense's argument.

**ORDER**

**IT IS ORDERED:**

The Defendant's objections to the two sentencing enhancements are OVERRULED for the reasons stated on the record during the sentencing hearing and as supplemented by this memorandum.



DATED: April 21, 2026

B. Lynn Winmill
U.S. District Court Judge